In re R. ERIC PETERSON CONSTRUCTION COMPANY, INC., Debtor.

R. ERIC PETERSON CONSTRUCTION COMPANY, INC., Appellant,

v.

QUINTEK, INC., et al., Appellees.

No. 90–4122.

United States Court of Appeals, Tenth Circuit.

Dec. 13, 1991.

Duane H. Gillman (Janet A. Goldstein with him on the brief), of McDowell & Gillman, P.C., Salt Lake City, Utah, for plaintiff-appellant.

Jeffrey Weston Shields (David R. Olsen with him on the brief), of Suitter Axland

Armstrong & Hanson, Salt Lake City, Utah, for defendants-appellees.

Before BALDOCK, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and EBEL, Circuit Judge.

EBEL, Circuit Judge.

■ In this appeal, we address whether a debtor met the prerequisites to maintain a claim of bad faith against petitioning creditors pursuant to section 303(i) of the Bankruptcy Code, 11 U.S.C. § 303(i), after the underlying involuntary bankruptcy petition was dismissed without objection by the debtor.[1] This issue turns on whether the debtor consented to dismissal of the bankruptcy petition when it did not object to the creditors' voluntary dismissal of the bankruptcy petition, although at the same time specifically reserving a claim against the creditors under section 303(i) for the alleged bad faith filing of the bankruptcy petition. We hold that the debtor did not consent to the dismissal within the meaning of 11 U.S.C. § 303(i) and that the debtor therefore met the prerequisites to maintain the claim for damages against the petitioning creditors.[2]

## I. Facts

In September 1986, Quintek, Inc. ("Quintek"), along with several other subcontractors, petitioned the United States Bankruptcy Court for the District of Utah to place R. Eric Peterson Construction Company, Inc. ("Peterson") in involuntary bankruptcy pursuant to 11 U.S.C. § 303. Quintek's counsel sent letters to all subcontractors with whom Peterson did business informing them of the involuntary petition. That publicity, in addition to the filing, had a disastrous effect on Peterson's financial health.

Peterson opposed the bankruptcy petition, alleging that it had paid its bills in timely fashion and that the creditors' claims were the subject of bona fide disputes, making the petition nonmeritorious pursuant to 11 U.S.C. § 303(b)(1). Peterson further alleged that the petition itself had been filed without adequate investigation of the company's financial status.

■ In October 1987, the petitioning creditors moved to dismiss the involuntary petition pursuant to 11 U.S.C. § 303(j)(1).[3] At a hearing on the motion, the bankruptcy court asked if Peterson objected to dismissal. The following colloquy then occurred:

MR. BOONE [Counsel for Peterson]: I would like to indicate a reservation. The debtor does not object to the petition being dismissed, but it is the debtor's feeling that this petition was filed in bad faith and it wishes to assert a claim under 303([i]). And we would like to reserve the right, if we would go along with the dismissal, subject to reserving in the Court's jurisdiction and the right to have the bad faith claim adjudicated under 303([i]).

MR. GOODMAN [Counsel for Quintek]: There are no objections to that, your Honor.

THE COURT: Case will be dismissed subject to the Court reserving jurisdiction to hear appropriate proceedings under 303([i]), which motion the Court will require to be brought, if at all, within 60 days.

Record, Vol. III, at 4–5. The written order of dismissal recited the following:

1. The appellant has moved to supplement the record to include the following items: two transcripts, a pleading, an affidavit, and two district court briefs. All of these items were before one or both of the lower courts in this case. We will grant the appellant's motion as to all items except the briefs. Briefs in the district court are not ordinarily an appropriate part of our record on appeal. 10th Cir.R. 10.2.4.

2. The district court treated the section 303(i) prerequisites as requirements for subject matter jurisdiction. For purposes of our opinion, we need not decide whether these prerequisites are jurisdictional or merely elements of a cause of action under section 303(i).

3. It is relevant to note that the petitioners sought dismissal under 11 U.S.C. § 303(j)(1) (which is "on the motion of a petitioner") rather than under 11 U.S.C. § 303(j)(2) (which is "on *consent* of all petitioners and the *debtor*" [emphasis added] ). *See* Record, Vol. III, at 3. Had Peterson agreed to a dismissal under § 303(j)(2), it could not deny having given consent to the dismissal.

**1178**

At the hearing, the Court considered the recommendations and arguments of counsel, including debtor's position that it did not oppose the Motion. The Court also considered debtor's request that the Court retain jurisdiction to consider debtor's claims under Bankruptcy Code § 303(i)(2).... Accordingly, IT IS HEREBY ORDERED that the involuntary petition filed in the proceeding be and hereby is dismissed. IT IS FURTHER ORDERED that the Court retains jurisdiction to consider any claim debtor may wish to assert under Bankruptcy Code § 303(i)(2).

Record, Vol. II, Doc. 53, at 1–2. Peterson proceeded to file its complaint alleging bad faith against the petitioning creditors pursuant to 11 U.S.C. § 303(i).

In November 1987, in the context of considering a request by Peterson for examination of the creditors pursuant to Bankruptcy Rule 2004, one of the creditors argued that Peterson had consented to dismissal of the involuntary petition and that the bankruptcy court therefore had been stripped of jurisdiction to hear the bad faith claim.[4] The bankruptcy court rejected that argument, finding that "the debtor did not consent but simply did not contest the dismissal of the case, at least it did not consent within the meaning of Section 303(i)." Record, Vol. IV, at 22. Ultimately, the creditors moved for summary judgment, alleging that no evidence of bad faith existed that would entitle Peterson to relief. In October 1989, the bankruptcy court granted this motion.

Peterson appealed the bankruptcy court's summary judgment to the United States District Court for the District of Utah, alleging that genuine issues of material fact remained on the issue of bad faith. In July 1990, after submission of briefs on the issue of whether Peterson had presented sufficient evidence of bad faith to avoid summary judgment, but before oral arguments, the district court affirmed the bank-

ruptcy court's summary judgment order on the grounds, raised *sua sponte*, that the bankruptcy court had no jurisdiction to hear the claim. The district court found that Peterson had consented to dismissal of the bankruptcy petition and that Peterson had therefore failed to comply with the jurisdictional prerequisites to maintain an action under 11 U.S.C. § 303(i). The basis for this conclusion was the written order of dismissal of the involuntary petition, which recited that Peterson "did not oppose" the motion for dismissal. Because neither party had raised the issue of consent on appeal, the district court did not have the transcript of the bankruptcy court's dismissal hearing when it made its *sua sponte* jurisdiction ruling.

Peterson filed a timely appeal from the district court's order. Peterson argues that it did not consent to dismissal of the petition and that it had no opportunity to argue its lack of consent to the district court. We have jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(d).

**II. Standard of Review**

■ We must construe the meaning of the word *consent* in section 303(i), and we must determine whether Peterson's undisputed conduct constituted consent as a matter of law. We consider these issues *de novo*. *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991); *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988).

**III. Discussion**

■ Section 303 of the Bankruptcy Code, 11 U.S.C. § 303, governs petitions for involuntary bankruptcy. When a bankruptcy court dismisses a petition for involuntary bankruptcy, the debtor may, under certain circumstances, recover costs and, in the case of a bad faith filing, it may also recover damages from the petitioning creditors. Section 303(i) provides in relevant part:[5]

**4.** A condition to bringing a bad faith claim under section 303(i) is that the dismissal of the bankruptcy petition was "other than on consent

of all petitioners and the debtor." 11 U.S.C. § 303(i).

**5.** The version of section 303(i) set forth here reads as it did when Quintek filed the petition

If the court dismisses a petition under this section *other than on consent of all petitioners and the debtor,* and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

 (1) against the petitioners and in favor of the debtor for—

 (A) costs;

 (B) a reasonable attorney's fee; or

 . . . . .

 (2) against any petitioner that filed the petition in bad faith, for—

 (A) any damages proximately caused by such filing; or

 (B) punitive damages.

(emphasis added). Thus, the text of the statute makes a damage award contingent on three prerequisites. First, the court must have dismissed the petition. Second, the dismissal must be other than on consent of all petitioners and the debtor. Third, the debtor must not have waived its right to recovery under the statute. In the instant case, no one disputes that the bankruptcy judge dismissed the petition or that Peterson did not waive its rights under the section. The only question remaining is whether Peterson consented to dismissal.

We are aware of only two cases that have addressed the meaning of consent in this statute. *See In re Int'l Mobile Advertising Corp.,* 117 B.R. 154, 157 (Bankr. E.D.Pa.1990), *aff'd,* No. 90–6349, 1991 WL 156588, 1991 U.S. Dist. LEXIS 11294 (E.D.Pa. Aug. 13, 1991); *In re Kelton Motors, Inc.,* 121 B.R. 166, 186–87 (Bankr. D.Vt.1990).

In *International Mobile Advertising,* the debtor and petitioning creditor filed a joint motion to dismiss. The Order for Dismissal noted explicitly that "the Debtor has not waived its rights to damages caused by the filing of the within proceeding." 117 B.R. at 155. The debtor then sought damages pursuant to section 303(i). Even though it was clear that the debtor had not *waived* its claim, the bankruptcy

court held that the debtor could not recover damages because both the debtor and the petitioning creditor had *consented* to dismissal. The court stated, "The parties cannot, by agreement, empower a federal court to hear a matter which it lacks statutory jurisdiction to consider." *Id.* at 157. On appeal, the district court broadened the bankruptcy court's holding by ruling that the Senate Judiciary Committee Report accompanying the bill that enacted section 303 "together with the express language in the statute clearly indicate that Congress intended that the remedy provided for in Section 303 be reserved for *contested petitions* and not in situations where the petitions are, by mutual consent, voluntarily dismissed." *International Mobile Advertising,* 1991 WL 156588, at *1, 1991 U.S. Dist. LEXIS 11294, at *3 n. 1 (emphasis added).

*Kelton Motors* reached the opposite result. In that case, the debtor filed for Chapter 11 protection after creditors filed a petition for involuntary bankruptcy against it. Before filing to convert the matter to a voluntary proceeding, the debtor reserved, in open court, the right to seek damages against the petitioning creditors under section 303(i) for the initial involuntary petition. The creditors argued that by filing voluntarily under Chapter 11, the debtor had waived its right to claim damages under section 303(i). According to the creditors' argument, the debtor's voluntary filing under Chapter 11 prevented the bankruptcy court from ruling on the merits of the involuntary petition, and therefore the debtor had not satisfied the prerequisites of section 303(i).

The bankruptcy court rejected the creditors' argument, holding that the reservation of the right to seek damages "qualified" the debtor's consent:

> [W]hat good is the parties' express reservation of a debtor's right to a judgment under § 303(i) if, by the parties giving consent to the dismissal of the involuntary petition simultaneously with the non-waiver of judgment, the debtor

---

for involuntary bankruptcy. Section 303(i) was amended soon after. *See* Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. 99–554, § 204,

100 Stat. 3088, 3097 (1986). The changes had no effect on the meaning of the section as applicable to this case.

would lose its right to that very judgment? As a practical matter in the proceeding *sub judice*, if [the debtor] had understood its express non-waiver of its right to a judgment under § 303(i) might not also qualify its consent to the entry of a dismissal of the involuntary petition, then it is likely [the debtor] would not have consented to the dismissal of the involuntary petition. The preservation of a right to a judgment subsumes any consent, thus, we hold [the debtor's] reservation of right to a § 303(i) judgment necessarily qualified [the debtor's] consent to the dismissal of the involuntary petition in the first place....

*Kelton Motors*, 121 B.R. at 186–87.

 We find neither of these cases completely persuasive. We begin our analysis by attaching a common sense meaning to the word *consent*. A debtor should not be required actively to oppose dismissal of an involuntary bankruptcy in order to preserve a claim for damages under section 303(i) if that petition was wrongfully brought. A more passive statement of nonopposition to the creditors' motion to dismiss the petition should not indicate consent, at least where, as here, the debtor simultaneously manifests its intention to seek damages under section 303(i).

Under Quintek's interpretation of consent, the debtor would face a Hobson's choice if the creditors moved to dismiss the involuntary petition. On the one hand, the debtor wants to remove the stigma of the involuntary bankruptcy petition as soon as possible. On the other hand, the debtor wishes to preserve its rights to recover costs or damages from the petitioning creditors. However, the debtor cannot seek damages pursuant to section 303(i) until after dismissal of the involuntary petition has occurred. Therefore, as Quintek reads section 303(i), for a debtor to preserve its rights to recover under that section, it would be required to oppose the petition-

er's motion to dismiss, even though doing so prolongs the period that the involuntary bankruptcy remains pending, accentuates the prejudice caused by the involuntary petition, and prevents actual recovery until after dismissal, which the debtor really favors but is artificially being forced to oppose. Nothing in the language of the statute requires us to give it such an illogical reading. *Cf. Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 52 (3d Cir.1988).

To make matters more absurd, Quintek's interpretation of consent would require the bankruptcy court to waste its scarce resources holding a hearing that neither party really wants. If the debtor is required to oppose the motion to dismiss, the bankruptcy court must hear the motion although in reality neither the petitioning creditors nor the debtor wish the bankruptcy proceeding to continue. We agree with the bankruptcy court that construing consent in this manner to require such actions against self-interest by the debtor leads to a "ridiculous result." Record, Vol. IV, at 19.

Moreover, Quintek's argument blurs the distinction between a section 303(j)(1) dismissal and a section 303(j)(2) dismissal.[6] Here the bankruptcy court dismissed pursuant to section 303(j)(1), which does not require the debtor's consent, rather than pursuant to section 303(j)(2), which does require a debtor's consent.

 In this case, Peterson did not oppose the motion to dismiss. However, neither did it consent to the motion. The only language that might indicate otherwise is counsel's phrase "if we would go along with the dismissal."[7] Taken alone, this phrase might give us pause. In the context of counsel's full statement, which responded to the court's request for objections to the motion to dismiss, however, this phrase does not indicate consent.

---

**6.** Section 303(j) provides three methods of dismissing an involuntary petition prior to adjudication on the merits:

> Only after notice to all creditors and a hearing may the court dismiss a petition filed under this section—
>
> (1) on the motion of a petitioner;

> (2) on consent of all petitioners and the debtor; or
>
> (3) for want of prosecution.

11 U.S.C. § 303(j).

**7.** *As indicated previously, the precise statement made by Peterson's counsel was the following:*

 A bankruptcy court's failure to render a decision on the merits on an involuntary petition does not in itself prevent that court from hearing a section 303(i) damages claim. Where, as here, the debtor does not affirmatively consent to dismissal and where a fair reading of the record makes it clear that the debtor intended not to waive its rights under section 303(i), the bankruptcy court may entertain a claim for damages pursuant to section 303(i).

Our holding is not inconsistent with the result in *International Mobile Advertising*. Because the parties in that case moved jointly to dismiss (unlike in the instant case), the court dismissed the case pursuant to section 303(j)(2). It is therefore beyond dispute that the debtor there consented to the dismissal, and the court properly declined to allow a damage claim under section 303(i). We do, however, disagree with the district court's language in *International Mobile Advertising* that "the petition must be contested" to make section 303(i) damages available. 1991 WL 156588, at *1, 1991 U.S. Dist. LEXIS 11294, at *3. We are not inclined to engraft such an additional requirement onto the statute, particularly when it would lead to the illogical results pointed out above.[8]

 We also respectfully disagree with *Kelton Motors* because it holds that explic-

it nonwaiver of the right to seek damages under section 303(i) necessarily precludes a finding of consent to dismissal. In contrast to *International Mobile Advertising*, which sought to add an additional requirement to section 303(i), *Kelton Motors* seeks to delete a requirement. Section 303(i) clearly requires nonconsent, *in addition to* nonwaiver. To say that nonwaiver alone is sufficient would read out of the statute the nonconsent requirement. In fact, a situation like the one in *International Mobile Advertising* demonstrates that a debtor may seek explicitly to reserve the right to damages and yet, by affirmatively consenting to the dismissal, fail to meet all the prerequisites of section 303(i). The statute requires *both* nonconsent and nonwaiver, and although a clear statement of nonwaiver of a damage claim under section 303 may help a court in interpreting whether ambiguous conduct by the debtor should be construed as consent, if the debtor and all other parties to an involuntary petition unequivocally consent to its dismissal, the language of section 303(i) bars a subsequent damage claim regardless of whether the debtor sought to preserve such a claim.[9]

## IV. Other Issues

Peterson also asks us to reverse the bankruptcy court's summary judgment rul-

---

I would like to indicate a reservation. The debtor does not object to the petition being dismissed, but it is the debtor's feeling that this petition was filed in bad faith and it wishes to assert a claim under 303( [i] ). And we would like to reserve the right, if we would go along with the dismissal, subject to reserving in the Court's jurisdiction and the right to have the bad faith claim adjudicated under 303( [i] ).
Record, Vol. III, at 4.

**8.** The reference in *International Mobile Advertising* to legislative history is quite unpersuasive. The court there purported to rely on language in the Senate report accompanying the bill enacting § 303(i). The exact language quoted by the court from the Senate report was: "Subsection (i) [of § 303 of the Bankruptcy Code] permits the court to award costs, reasonable attorney's fees, or damages if an involuntary petition is dismissed other than [by] consent of all petitioning creditors and the debtor." *International Mobile Advertising*, 1991 WL 156588, at *1 n. 1, 1991 U.S. Dist. LEXIS 11294, at *3 n. 1 (quoting

S.Rep. No. 989, 95th Cong.2d Sess. 34 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5820). The language relied upon parrots the language of the statute almost word for word and, in our view, provides no guidance at all beyond the words in the statute. Moreover, that report's observation that non-meritorious petitions may nonetheless put a debtor out of business, S.Rep. No. 989, at 33, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 5819, suggests that Congress intended the availability of section 303(i) to depend on the merit, or lack thereof, of the petition, rather than upon whether dismissal was contested.

**9.** It is ambiguous in *Kelton Motors* whether the court ever dismissed the involuntary petition. *Compare Kelton Motors*, 121 B.R. at 173–74 (petitioning creditors asserted that no dismissal of the involuntary petition had taken place) *and id.* at 186 ("there was no separate adjudication of a dismissal of the involuntary petition") *with id.* at 186–87 (debtor consented to dismissal after explicitly reserving right to seek damages under

ing for Quintek on the merits of the bad faith claim. Peterson asserts that sufficient evidence of bad faith exists in the record to preclude summary judgment. The district court never reached this issue because of the court's jurisdictional holding. We therefore remand this issue to the district court. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("It is the general rule ... that a federal appellate court does not consider an issue not passed upon below.").

Quintek makes three arguments that go to the merits of the bad faith claim. First, Quintek contends that any bad faith must lie with Quintek's former counsel, rather than with Quintek or its owner. Second, Quintek contends that Peterson should have mitigated its damages caused by the filing of the petition. Third, Quintek contends that Peterson's claims of bad faith are frivolous and that subjecting Quintek to the continued costs of litigation is therefore unjust.

Today, we decide only whether Peterson met the prerequisites necessary to bring its bad faith claim under section 303(i). We do not consider the legal merit of Peterson's claim. Quintek must direct its arguments regarding bad faith to the district court upon remand.

V. Conclusion

In summary, we hold that, as a matter of law, Peterson did not consent to dismissal within the meaning of 11 U.S.C. § 303(i) and that the bankruptcy court therefore could hear Peterson's bad faith claim for damages against Quintek. Accordingly, we REVERSE the district court's jurisdictional ruling, VACATE the district court's affirmance of the bankruptcy court, and REMAND the case to the district court to consider Peterson's appeal of the bankruptcy court's summary judgment.

section 303(i)). To the extent that *Kelton Motors* stands for the proposition that dismissal is

not a prerequisite to seeking damages under section 303(i), we disagree.